## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

RBX INDUSTRIES, INC.
906 Adams Street, Suite 200          :
Bedford, VA 24523,                   :
individually and on behalf of all others :
similarly situated,                  :
    Plaintiff,                    :
                                  :
v.                                   :
                                  :
AC CARGO LP, ACE AVIATION            :    CIVIL ACTION NO.
HOLDINGS, INC., AIR CANADA, AIR      :
FRANCE ADR, AIR FRANCE CARGO         :
ADR, AIR FRANCE-KLM CARGO ADR,       :
AIR FRANCE-KLM GROUP ADR, ASIANA     :    CLASS ACTION COMPLAINT
AIRLINES, INC., ATLAS AIR            :
WORLDWIDE HOLDINGS, INC., BRITISH    :
AIRWAYS PLC, CARGOLUX AIRLINES       :    JURY TRIAL DEMANDED
INTERNATIONAL S.A., CATHAY           :
PACIFIC AIRWAYS LTD., DEUTSCHE       :
LUFTHANSA AG, JAPAN AIRLINES         :
INTERNATIONAL COMPANY LTD.,          :
KOREAN AIRLINES COMPANY, LTD.,       :
LAN AIRLINES S.A., LAN CARGO S.A.,   :
LUFTHANSA CARGO AG, NIPPON           :
CARGO AIRLINES COMPANY, LTD.,        :
POLAR AIR CARGO, INC., SAS AB d/b/a  :
SAS GROUP, SAS CARGO GROUP A/S,      :
SINGAPORE AIRLINES CARGO PTE         :
LTD., SINGAPORE AIRLINES, LTD.,      :
SWISS INTERNATIONAL AIR LINES        :
LTD., UAL CORPORATION, UNITED        :
AIRLINES CARGO INC., UNITED          :
AIRLINES INC., UNITED PARCEL         :
SERVICE OF AMERICA INC., UPS AIR     :
CARGO, UPS SUPPLY CHAIN              :
SOLUTIONS, VIRGIN ATLANTIC           :
AIRWAYS LIMITED, INTERNATIONAL       :
AIR TRANSPORT ASSOCIATION,           :
and JOHN DOES 1-10,                  :
    Defendants,

## CLASS ACTION COMPLAINT

1.     Plaintiff, RBX Industries, Inc., brings this action on behalf of itself and all persons and entities under the federal antitrust laws, Section 1 of the Sherman Act, 15 U.S.C. § 1 and Section 4 of the Clayton Act, 15 U.S.C. § 15.

2.     Plaintiff alleges that Defendants, during the Class Period defined below, operated a global air fright cartel (the "Cartel") that damaged Plaintiff by forcing it to pay supra-competitive rates for air freight services.

### JURISDICTION AND VENUE

3.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337(a).

4.     Venue is found in this district pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391(b), (c) and (d) because one or more of the Defendants transact business in this district, or had agents in this district.

### PLAINTIFF

5.     Plaintiff  RBX Industries, Inc. ("RBX"), the corporate successor of Rubatex Corporation, is a Delaware corporation with headquarters at 906 Adams Street, Suite 200, Bedford, VA 24523.  During and throughout the Class Period, Plaintiff directly purchased air freight services from one or more of the Defendants.

### DEFENDANTS

6.     Defendant AC Cargo LP ("AC") is a Canadian company headquartered at 5100 de Maisonneuve Boulevard West, Montreal, Quebec H4A 3T2, Canada.  AC conducts air freight business across the world, and has operations in the United

2

States. AC is a subsidiary of Defendant ACE Aviation Holdings, Inc. and, on

knowledge and belief, at all relevant times, ACE Aviation Holdings, Inc. owned and

controlled the business of AC.

7.    Defendant ACE Aviation Holdings, Inc. ("ACE") is a Canadian

company headquartered at 5100 de Maisonneuve Boulevard West, Montreal,

Quebec H4A 3T2, Canada. ACE conducts air freight business across the world, and

has operations in the United States.

8.    Defendant Air Canada is a Canadian company headquartered at 5100

de Maisonneuve Boulevard West, Montreal, Quebec H4A 3T2, Canada. Air Canada

conducts air freight business across the world, and has operations in the United

States. Air Canada is a subsidiary of Defendant ACE and, on knowledge and belief,

at all relevant times, ACE owned and controlled the business of Air Canada.

9.    Defendant Air France ADR ("Air France") is headquartered at 45, rue

de Paris 95747 Roissy-CDG Cedex, France, and maintains a United States office at

1120 Connecticut Avenue NW, Suite 1050, Washington, DC 20036. Air France

conducts its air freight shipping business world-wide, and has operations in the

United States. Air France is a subsidiary of Air France-KLM Group ADR and, on

information and belief, was at all relevant times owned and controlled by Air

France-KLM Group ADR.

10.    Defendant Air France Cargo ADR ("Air France Cargo") is

headquartered at 45, rue de Paris 95747 Roissy-CDG Cedex, France, and maintains

a United States office at 1120 Connecticut Avenue NW, Suite 1050, Washington,

DC 20036. Air France Cargo conducts its air freight shipping business world-wide, and has operations in the United States. Air France Cargo is a subsidiary of Air France-KLM Group ADR and, on information and belief, was at all relevant times owned and controlled by Air France-KLM Group ADR.

11.    Defendant Air France-KLM Group ADR Inc. ("Air France-KLM") is headquartered at 45, rue de Paris 95747 Roissy-CDG Cedex, France, and maintains a United States office at 1120 Connecticut Avenue NW, Suite 1050, Washington, DC 20036. Air France-KLM ships to hundreds of destinations including multiple locations in the United States. Air France-KLM has been questioned by United States and European Antitrust investigators about alleged Cartel activity.

12.    Defendant Air France-KLM Cargo ADR ("Air France-KLM Cargo") is headquartered at 45, rue de Paris 95747 Roissy-CDG Cedex, France, and maintains a United States office at 1120 Connecticut Avenue NW, Suite 1050, Washington, DC 20036. Air France-KLM Cargo conducts its air freight shipping business world-wide, and has operations in the United States. Air France-KLM Cargo is a subsidiary of Air France-KLM and, on information and belief, was at all relevant times owned and controlled by Air France-KLM.

13.    Defendant Asiana Airlines Inc. conducts airfreight shipping throughout the world, including the United States and has its headquarters at Asiana Twon Kangseo, P.O. Box 98 #47, Osaw-Dong, Kangseo-Ku, Seoul, South Korea. Asiana has said it was raided by local antitrust investigators, presumably related to the alleged Cartel.

14.    Defendant Atlas Air Worldwide Holdings, Inc. ("Atlas") is a Delaware corporation headquartered at 2000 Westchester Avenue, Purchase, New York 10577. Atlas operates an world-wide airfreight shipping business that includes operations in the United States.

15.    Defendant British Airways PLC ("British Airways") has its principal place of buinsess at Waterside, UB7 GB Harmondsworth, Middlesex, England, and maintains an office in the United States at Dulles International Airport, Cargo Building 3, Door 155, Washington, DC 20041. British Airways operates a global air freight shipping business with operations in the United States  British Airways has been approached or raided by antitrust officials investigating the alleged Cartel. British Airways' air freight cargo division is named British Airways World Cargo.

16.    Defendant Cargolux Airlines International S.A. ("Cargolux") is a Luxembourg company headquartered at Luxembourg Airport L-2990, Luxembourg, Grandy Duchy of Luxembourg. Cargolux operates a global air freight shipping business with operations in the United States. Cargolux has stated that it is cooperating with authorities investigating the alleged Cartel.

17.    Defendant Cathay Pacific Airways is headquartered at Hong Kong International Airport, 7/F North Tower, 8 Scenic Road, Cathay City, Lantau, Hong Kong. It ships to hundreds of destinations world-wide, including multiple locations in the United States. Officials from the European Competition Commission and the United States Department of Justice have visited the company's offices in

Frankfurt, Germany, Los Angeles and San Francisco. On information and belief, these visits were in conjunction with the alleged Cartel.

18.     Defendant Deutsche Lufthansa AG ("Lufthansa AG") is headquartered at Von-Gablenz-Strasse 2-6, 50679 Köln, Germany, and maintains a United States office at 1101 Connecticut Ave. NW, Washington, DC 20036. Lufthansa AG operates a world-wide air freight shipping business, including operations in the United States. On information and belief, Lufthansa AG has been approached by antitrust officials investigating the alleged Cartel.

19.     Defendant Japan Airlines International Company Ltd. ("JAL") is headquartered at 4-11, Higashi-shinagawa 2-chome, Shinagawa-ki, Tokyo 140-8637, Japan, and has a United States office located at 1050 Connecticut Ave., N.W., Suite 200, Washington, DC 20036. JAL operates a global air freight shipping business that transacts business within the United States. JAL has stated that European Competition Commission officials have searched its offices in Frankfurt, Germany. On information and belief, the search by European authorities was connected to the alleged Cartel. JAL's cargo division is named JAL Cargo.

20.     Defendant Korean Airlines Company, Ltd. ("Korean Air") is headquartered at KAL Building 1370, Gonghang-dong, Gangeo-gu, Seoul, South Korea. Korean Air ships air freight to hundreds of destinations world-wide, including many in the United States. Korean Air has stated that they have been raided by local antitrust authorities; presumably these raids were conduction in connection to the global Cartel investigation.

21.    Defendant Lan Airlines S.A. ("Lan Airlines") is a company organized in the Republic of Chile with its headquarters located at President Riesco 5711 Pio 20, Las Condes, Santiago, Chile. Lan Airlines operates a United States office at 1717 K Street NW, Washington, DC 20036. Lan Airlines operates a global air freight business, including courier services to and from the United States. Lan Airlines has been approached by authorities investigating the alleged Cartel.

22.    Defendant Lan Cargo S.A. ("Lan Cargo") is organized in the Republic of Chile with its headquarters located at President Tiesco 5711 Pio 20, Las Condes, Santiago, Chile. Lan Cargo operates a United States office at 1717 K Street NW, Washington, DC 20036. Lan Cargo operates a global air freight business, including courier services to and from the United States. Lan Cargo has been approached by authorities investigating the alleged Cartel. Lan Cargo is a wholly owned subsidiary of Lan Airlines. On information and belief, at all relevant times, Lan Airlines owned and controlled the business of Lan Cargo.

23.    Defendant Lufthansa Cargo AG ("Lufthansa Cargo") is headquartered at Von-Gablenz-Strasse 2-6, 50679 Köln, Germany, and maintains a United States office at 1101 Connecticut Ave. NW, Washington, DC 20036. Lufthansa Cargo operates a world-wide air freight shipping business, including operations in the United States. On information and belief, Lufthansa Cargo has been approached by antitrust officials investigating the alleged Cartel. Lufthansa Cargo is a subsidiary of Lufthansa AG and, on information and belief Lufthansa AG owned and controlled

the business operations of Lufthansa Cargo during all times relative to the alleged Cartel.

24.    Defendant Nippon Cargo Airlines Company, Ltd. ("NCA") is a Japanese company headquartered at Shiodome City Center 8F 5-2, Higashi-Shinbashi, 1-Chrome, Minato-Ku, Tokyo 105-7108, Japan and maintains a United States office at Cargo Building No. 5, Washington, Dulles International Airport, Washington, DC 20041.  NCA operates a world-wide air freight shipping business, which has operations in the United States.

25.    Defendant Polar Air Cargo, Inc. ("Polar Air") is a California corporation headquartered at 2000 Westchester Avenue, Purchase, New York 10577.  Polar Air operates an airfreight shipping business operating throughout the world, including the United States.  Polar Air is a wholly owned subsidiary of Atlas. On information and belief, during the Class Period, Atlas owned, and controlled the business of Polar Air.  Polar Air has been approached by officials investigating the alleged Cartel.

26.    Defendant SAS AB does business as the SAS Group.  The SAS group is headquartered at Frösundaviks Allé 1, 195 87 Stockholm, Sweden, with a United States office at Ronald Reagan Washington National Airport, Washington, DC 20001.  SAS Group operates a global air freight business that extends into the United States.  On information and belief, SAS Group is under investigation by United States and European antitrust authorities for its participation in the alleged Cartel.

27.    Defendant SAS Cargo Group A/S ("SAS Cargo") is headquartered at Frösundaviks Allé 1, 195 87 Stockholm, Sweden, with a United States office at Ronald Reagan Washington, National Airport, Washington, DC 20001. SAS Cargo operates a global air freight business that extends into the United States. On information and belief, SAS Group is under investigation by United States and European antitrust authorities for the participation in the alleged Cartel. SAS cargo is a subsidiary of SAS Group and, on information and belief, at all relevant times SAS Group owned and controlled the business of SAS Cargo.

28.    Defendant Singapore Airlines Limited ("Singapore Airlines") is a Singaporen corporation headquartered at Airline House, 25 Airline Road, Singapore 819829. Singapore Airlines conducts air freight business throughout the world, including the United States.

29.    Defendant Singapore Airlines Cargo Pte Ltd. ("SIA Cargo") is a Singaporen corporation headquartered at 5th Floor Core L, SATS Airfrieght Terminal 5, Superhub 1, 30 Airline Road, Singapore 819830. SIA conducts airfreight business throughout the world, including the United States. SIA Cargo is a subsidiary of Singapore Airlines and, on information and belief, was owned and controlled at all relevant times by Singapore Airlines.

30.    Defendant Swiss International Air Lines Ltd. ("Swiss International") is a Swiss company headquartered at Aeschenvorstadt 4, CH-4051 Basel, Switzerland. Swiss International conducts a global airfreight shipping business that extends into the United States. SwissWorldCargo is Swiss International's cargo division.

9

31.    Defendant UAL Corporation ("UAL") is a United States-based airline with its headquarters at 1200 E. Algonquin Rd., Elk Grove Township, Illinois. United conducts air freight business across the world, including operations in the United States.

32.    Defendant United Airline Inc. ("United") is a United States-based airline with its headquarters at 1200 E. Algonquin Rd., Elk Grove Township, Illinois.  United conducts air freight business across the world, including operations in the United States.  United is a subsidiary of UAL and, on information and belief, United was owned and controlled by UAL at all times relevant to the alleged Cartel.

33.    Defendant United Airline Cargo Inc. ("United Cargo") is a United States-based airline with its headquarters at 1200 E. Algonquin Rd., Elk Grove Township, Illinois 60007.  United Cargo conducts air freight business across the world, including operations in the United States.  United Cargo is a subsidiary of UAL and, on information and belief, United Cargo was owned and controlled by UAL at all times relevant to the alleged Cartel.

34.    Defendant United Parcel Service of America Inc. ("UPS") is a United States  based airline headquartered at 55 Glenlake Parkway, N.E., Atlanta, Georgia 30328.  UPS operates a worldwide airfreight shipping business, which includes operations in the United States.

35.    Defendant UPS Air Cargo ("UPS Air Cargo") is a United States business headquartered at 1400 N. Hurstbourne Parkway, Louisville, Kentucky 40223.  UPS Air Cargo operates an airfreight shipping business operating

throughout the world, including the United States. UPS Air Cargo is a subsidiary of UPS and, on information and belief, was owned and controlled by UPS throughout the relevant time period.

36.    Defendant UPS Supply Chain Solutions is a United States company headquartered at 55 Glenlake Parkway, NE, Atlanta, GA 30328. UPS Supply Chain Solutions was formed by the merger of two units of UPS, UPS Freight Services, f/k/a Fritz Companies, and UPS Logistics Group. UPS Supply Chain Solutions operates a worldwide air freight shipping business, which includes operations in the United States. UPS Supply Chain Solutions is a subsidiary of UPS and, on information and belief, was owned and controlled by UPS throughout the relevant time period.

37.    Defendant Virgin Atlantic Airways Limited ("Virgin Atlantic") is a company organized in England and Wales, headquartered at The Office, Crawley Business Quarter, Manor Royal, Crawley, West Sussex RH10 9NU, England. Virgin Atlantic operates a worldwide air freight shipping business, which includes operations in the United States.

38.    Defendants identified in the above paragraphs 6 through 37 are collectively termed the "Air Freight Carrier Defendants."

39.    Defendant International Air Transport Association ("IATA") is an international trade association representing the interests of the airline industry and is headquartered at 1776 K Street N.W., Suite 400, Washington, DC 20006. At all relevant times, all of the Air Freight Carrier Defendants were members of IATA.

## COCONSPIRATORS

40.    Various other persons, firms, and corporations, not named as

Defendants in this Complaint, have participated as coconspirators with Defendants

in the violations alleged herein, and have aided and abetted and performed acts and

made statements in furtherance of the conspiracy.

41.    On February 14, 2006, the United States Department of Justice and

the European Union Competition Commission conducted raids or otherwise

contacted an undisclosed number of airlines involved in air freight services in

connection with the alleged Cartel.

## CLASS ACTION ALLEGATIONS

42.    Plaintiff brings this action on its own behalf under Rule 23(b)(3) of the

Federal Rules of Civil Procedure with respect to damages sought herein, as

representatives of the Class as defined as follows:

> All persons or entities who purchased air freight shipping
> services in the United States directly from any of the
> Defendants or their coconspirators, or any present or
> former parent, subsidiary, or affiliate thereof, at any time
> during the period from January 1, 2000 to the present
> (the "Class Period"). Excluded from the Class are all
> governmental entities, subsidiaries or affiliates of the
> Defendants, and any of Defendants' coconspirators,
> whether or not such entity is named as a Defendant.

43.    While the exact size of the Class is unknown to Plaintiff at the present

time, the members of the Class are numerous and geographically dispersed

throughout the United States and joinder is impracticable.

44.    Plaintiff's claim is typical of the members of the Class, in that Plaintiff paid supra-competitive prices for air freight services and purchased air freight services directly from one or more Defendants.

45.    Plaintiff will fairly and adequately protect and represent the interests of the Class. The interests of Plaintiff coincide with, and are not antagonistic to, those of the Class.

46.    In addition, Plaintiff's counsel are experienced and competent in the prosecution of complex class action antitrust litigation.

47.    Questions of law and fact common to the members of the Class predominate over individual questions.

48.    Questions of law and fact common to the Class include:

    a)    Whether Defendants and their coconspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain, or stabilize prices of air freight services sold in the United States;

    b)    The identity of the participants in the conspiracy;

    c)    The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by Defendants and their coconspirators in furtherance of the conspiracy;

    d)    Whether the alleged conspiracy violated Section 1 of the Sherman Act;

13

e)     Whether the conduct of Defendants and their coconspirators, as alleged in this Complaint, caused injury to the business and property of Plaintiff and other members of the Class;

f)     The effect of Defendants' conspiracy on the prices of air freight services sold in the United States during the Class Period; and

g)     Whether, and to what extent, Defendants caused injury to the business or property of Plaintiff and the Class and, if so, the appropriate measure of the damages.

49.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy.  Among other things, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

50.     Plaintiff knows of no difficulty to be encountered in litigation of this action that would preclude its maintenance as a class action.

## INTERSTATE AND FOREIGN TRADE AND COMMERCE

51.    The activities of Defendants and their coconspirators, as described in this Complaint, substantially affected interstate and international commerce.

52.    During the Class Period, Defendants were major suppliers of air freight  services in the United States and world-wide.

53.    The global market for air freight services is estimated to be $50 million per year.  The aircraft maker Boeing Company estimates that the market will grow an average of 6.2% annually for the next 20 years.  Actual air freight for the past two months, as measured by the New York Customs District, is approximately 323,000 metric tonnes (323 million kilograms, or 712,093,107 pounds).

54.    Throughout the Class Period, there has been a continuous and uninterrupted flow of transactions and shipments in air freight services in interstate and international commerce in the United States and the world.

55.    Defendants' illegal activities in the market for air freight have been within the flow of interstate and international commerce, and have had a direct, substantial, and reasonable foreseeable effect on said commerce.

## FACTUAL BACKGROUND

56.    Beginning or around January 1, 2000, the exact date being unknown, Defendants conspired, contracted or combined for the purpose of, and with the effect of, instituting, raising, fixing, maintaining or stabilizing the price of certain surcharges for air freight services (the "Surcharges").

57.    The Surcharges were initiated, in part, to offset certain costs such as those for fuel, additional security needed after the 9/11 attacks, and war-risk insurance.

58.    These Surcharges were added to base prices for air freight services.

59.    The Air Freight Carrier Defendants are among the largest providers of air freight services in the United States and in the world. The Air Freight Carrier Defendants carry products, commodities and other goods on worldwide routes for individual and business customers.

60.    On or about July 4, 2005, Lufthansa and other Air Freight Carrier Defendants announced increases in fuel surcharges. These surcharges were raised to similar levels across companies, at about $0.45 per kilogram.

61.    Shortly thereafter, on or about August 31, 2005, several of the other Air Freight Carrier Defendants, including British Airways and Air France, raised their fuel surcharges.

62.    On February 14, 2006, the antitrust authorities from the European Commission and the United States Department of Justice announced that they had raided the offices of some of the Defendants, and requested documents from others, seeking evidence of a price-fixing cartel in the market for air freight services. Spokespeople for the European Commission and the United States Department of Justice indicated that the inquiry was industry-wide. Shortly thereafter, the Swiss competition authority Weko announced that it had initiated its own investigation into the alleged Cartel.

63.    Beginning on February 14, 2006, numerous Air Freight Carrier Defendants announced that their offices had either been raided by United States or European authorities or that these authoritative bodies requested information pertaining to the alleged Cartel.

64.    One such Air Freight Carrier Defendant, SAS, confirmed that its offices had been raided in connection with the Surcharges imposed by the air freight carriers following the September 11, 2001 attacks and after the United States led invasion of Iraq began in 2003. SAS further stated that the investigation extends back to the year 2000.

65.    A spokesperson for the British air freight policy group, the Freight Transport Association, stated that "shippers have long since identified and been concerned by the application of very similar levels of surcharges applied by different airline, in respect of fuel price increases, new security measures and other factors."

66.    Nicolette van der Jagt, secretary general of the European Shippers' Council ("ESC"), a trade and lobbying group, noted that a uniformity of prices in surcharges among air freight service providers exists, and that this "raises suspicion and doesn't help build customer confidence." She further noted that carriers did not distinguish between long and short flights in the imposition of fees, even though, obviously, the fuel costs depend on the length of the flight. The ESC has complained that the fees lack transparency, and that the fees charged sometime even exceeded total transport costs.

17

### Fraudulent Concealment and Equitable Tolling

67.    Plaintiff and other members of the Class could not have discovered that Defendants were violating the antitrust laws at an earlier time by the exercise of due diligence because of Defendants' fraudulent and active concealment of the conspiracy.

68.    Defendants' successful conspiracy to artificially inflate the prices for air freight services was executed in a manner that precluded detection and was inherently self-concealing.

69.    Because the contract, combination, or conspiracy was kept secret by Defendants, Plaintiff and other members of the Class were unaware that prices of air freight services were secretly agreed upon until February 2006, when certain Defendants and antitrust authorities for the first time disclosed the investigation into pricing of air freight services globally.  Before then, Defendants represented publicly that their pricing activities relating to air freight services were unilateral, and based upon legitimate factors, such as increased costs and other explanations given for rising Surcharges.

70.    The applicable statute of limitations has been tolled by Defendants' fraudulent concealment of their conspiracy.

### Specific Violations Alleged

71.    In formulating and effectuating the contract, combination or conspiracy alleged above, Defendants and their coconspirators, among other things:

    a)    Agreed to charge prices at certain levels and otherwise to fix, increase, maintain or stabilize prices of air freight services sold in the United States;

    b)    Exchanged sensitive confidential information relating to prices and customers;

    c)    Monitored and implemented collusive arrangements among cartel members; and

    d)    Sold air freight services at agreed-upon prices.

72.    Defendants and their coconspirators engaged in the activities described above for the purpose of effectuating unlawful arrangements to fix, maintain, raise or stabilize prices of air freight services.

73.    Defendants' anti-competitive agreement was implemented by, *inter alia*, a series of coordinated price increase announcements for air freight service surcharges that began in or about the year 2000. These coordinated price increases continued on a regular basis through at the present, with the actual and intended result that Plaintiff and members of the Class paid supra-competitive prices for air freight services for over six years. Defendants primarily and falsely attributed these price increases to increases in fuel costs, additional security and war-risk insurance.

74.    The conspiracy among Defendants is international in nature and scope. Defendants viewed and treated the air freight services market as a global market and, in fact, prices charged for air freight services in the European Union

and the rest of the world affected prices in the United States, and vice versa. Defendants needed to, and did, collude globally.

## COUNT I – SECTION 1 OF THE SHERMAN ACT

75.   Plaintiff incorporates by reference the preceding allegations.

76.   Defendants violated Section 1 of the Sherman Act by:

a)   Maintaining prices charged for air freight service surcharges at artificially high and noncompetitive levels; and

b)   Requiring Plaintiff and members of the Class to pay more for air freight services than they would have paid in a competitive marketplace, free from the Defendants' and their coconspirators' collusive and unlawful price-fixing.

77.   Plaintiff and the Class have, as a consequence of Defendants' anti-competitive behavior, sustained substantial losses and damage to their business and property in the form of paying prices for air freight services that were higher than they would have been but for Defendants' unlawful conspiracy.  The full amount of such damages is presently unknown and will be determined after discovery and upon proof at trial.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants for the following relief:

1.    Certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff as the representative of the Class, and designating their counsel as counsel for the Class;

2.    A judgment for damages sustained by Plaintiff and the Class defined herein, and for any additional damage, penalties and other monetary relief provided by applicable law, including treble damages;

3.    The cost of this suit, including reasonable attorneys' fees; and

4.    Such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiffs demand a trial by jury.

Date: March 23, 2006

Respectfully submitted,

Michael D. Hausfeld (D.C. Bar No. 153742)
COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
West Tower, Suite 500
1100 New York Avenue, N.W.
Washington, District of Columbia  20005
(202) 408-4600
(202) 408-4699 facsimile

*Local Counsel for Plaintiffs RBX Industries, INC.*

Dianne M. Nast
RODANAST, P.C.
801 Estelle Drive
Lancaster, Pennsylvania 17601
(717) 892-3000
(717) 892-1200 facsimile

Michael L. Roberts
ROBERTS LAW FIRM, P.A.
P.O. Box 241790
20 Rahling Circle
Little Rock, Arkansas  72223-1790
(501) 821-5575
(501) 821-4474 facsimile

*Counsel for Plaintiffs RBX Industries, INC.*